IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUST B METHOD, LLC and<br>BERNADETTE GIORGI<br>*Plaintiffs* | : <br> : <br> : <br> : | CIVIL ACTION<br><br>NO. 14-1516 |
| v. | : <br> : | |
| BSCPR, LP, BELLEVUE ASSOCIATES,<br>LP, BELLEVUE, INC., CENTERPOINT<br>PILATES, LLC, and MARGIE FOLEY<br>*Defendants* | : <br> : <br> : <br> : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                   OCTOBER 14, 2014

## MEMORANDUM OPINION

**INTRODUCTION**

Just b Method, LLC ("Just b"), and Bernadette Giorgi ( "Giorgi") (collectively, Plaintiffs) filed a breach of contract action against BSCPR, LP, Bellevue Associates, LP, Bellevue, Inc. (collectively, "Bellevue Defendants"), Centerpoint Pilates, LLC ("Centerpoint"), and Margie Foley ("Foley") (collectively, Defendants). [ECF 1].

Before this Court is Defendants' motion which seeks to compel Plaintiffs to arbitrate their claims pursuant to and consistent with the arbitration provision in the agreement between Just b and Bellevue Associates, LP d/b/a The Sporting Club (respectively, "The Bellevue" and "The Sporting Club") because Plaintiffs' breach of contract action stems from the agreement; and while Giorgi is a non-signatory to the agreement, she also should be compelled to arbitrate. [ECF 15]. Plaintiffs oppose Defendants' motion and contend that Defendants have waived the right to compel arbitration. [ECF 17]. Defendants filed a reply to said argument. [ECF 22]. The motion to compel arbitration is deemed ripe for disposition.

For the reasons stated herein, Defendants' motion to compel arbitration is granted, in part, and denied, in part. Plaintiffs' action, as it relates to Defendants Centerpoint and Foley is stayed, pending resolution of the ordered arbitration.

**BACKGROUND**

For purposes of the motion to compel arbitration, the pertinent facts in this matter, as gleaned from the complaint and pleadings, are summarized as follows:

> Just b is a New Jersey limited liability company. Giorgi is a reputable Pilates instructor and expert, and is Just b's sole member.[1]
>
> Bellevue Associates, L.P., d/b/a The Sporting Club, is a fitness center located in the Bellevue Hotel in Philadelphia, PA.[2]
>
> On July 11, 2011, Just b and The Bellevue entered into a six-page agreement ("Agreement"), wherein the parties contracted that Just b would provide its Method Pilates instruction at The Sporting Club in exchange for remunerations and certain conditions.[3] The parties stipulated that: the Agreement would run from the effective date until December 31, 2013, and was subject to renewal, if both parties agreed; and that the Agreement could be terminated by either party upon 30 days written notice to the other if sufficient revenue was not generated. Giorgi signed the Agreement "on behalf of Just b Method, LLC."[4]
>
> The Agreement further specified the parties' respective responsibilities as follows: The Sporting Club would provide a newly renovated Pilates Studio, the accessories, phone system, full access to the studio during operating hours, assign Giorgi to the group fitness schedule, and advertise for Just b.[5] In turn, Just b would hire, train, and determine the compensation of its instructors; Giorgi, bearing the title of Director of the Pilates studio,[6] would work with the Group Fitness Director to bridge the Mat Pilates Programming; conduct workshops to promote and generate additional revenue; offer services to existing clientele of The Sporting Club; and bring to The Sporting Club its Just b Method Pilates.[7]

---

[1] Am. Compl. ¶¶1, 2.
[2] *Id.* at ¶3.
[3] *Id.* at ¶11.
[4] *Id.* at ¶11b.
[5] *Id.* at ¶18; Agrt. ¶¶2, 3.
[6] Am. Compl. ¶16.
[7] *Id.* at ¶19.

2

The Agreement further provided that The Sporting Club would collect fees and compensate Giorgi and any instructor trained by Giorgi.[8] The parties agreed on the revenue distribution to be allocated to Giorgi and The Sporting Club, and the specific fees to charge customers.[9]

The Agreement contained a provision indicating that it "shall be governed by and in accordance with the laws of the Commonwealth of Pennsylvania. *Any legal action arising pursuant to this Agreement shall be resolved by binding arbitration* of JAMS, Inc., in Philadelphia, Pennsylvania."[10] (Emphasis added).

The parties projected annual revenue of $50,000 for calendar year 2012.[11] Plaintiffs contend that based upon these representations, Plaintiffs focused their services at The Bellevue and abandoned their commercial Pilates activities at their Jenkintown and Bala Cynwyd, Pennsylvania, locations.[12]

Sometime in March 2013, Centerpoint became co-occupants of the Pilates studio with Plaintiffs. Giorgi was informed by The Bellevue that she would no longer be referred to as Director of the Pilates studio.[13]

On May 26, 2013, Foley, acting on behalf of Centerpoint, issued an email to Plaintiffs' clients and members of The Sporting Club announcing that she would be taking over the Pilates program and solicited their patronage.[14]

On November 21, 2013, Giorgi received a letter from The Bellevue which informed her that Centerpoint would be managing the operations of the studio beginning January 1, 2014, and provided Plaintiffs notice of its intention to not renew the Agreement and to terminate it effective December 21, 2013 (rather than December 31, 2013, as provided in the Agreement). Giorgi was given until December 21, 2013, to vacate the Pilates studio.

Procedurally:

On March 13, 2014, Plaintiffs filed an 11-count complaint alleging that, *inter alia*, the Bellevue Defendants breached the Agreement.[15] On May 19, 2014,

---

[8] Am. Compl. ¶19.
[9] *Id*.; Agrt. ¶4.
[10] Agrt. ¶10.
[11] *Id*. at ¶1.
[12] Am. Compl. ¶17.
[13] *Id*. at ¶25.
[14] *Id*. at ¶27.
[15] Plaintiffs' claims include: Just b's claim for Breach of Contract against The Bellevue (Count I); Giorgi's Third Party Beneficiary Claim against The Bellevue (Count I(A)); Breach of Fiduciary/Confidential Duty/Relationship against all Bellevue Defendants (Count II); Intentional Interference with Existing Business/Contractual Relations against Centerpoint and Foley (Count III); Intentional Interference with Prospective Business/Contractual Relations against Centerpoint and Foley (Count IV); Civil Conspiracy against all Defendants (Count V); Fraud against The Bellevue (Count VI);

3

Defendants filed a motion to dismiss for failure to state a claim.[16] In response, Plaintiffs filed an amended complaint.[17] On June 13, 2014, Defendants filed a motion to dismiss the amended complaint[18] and, on June 20, 2014, sent an email to Plaintiffs' counsel seeking Plaintiffs' consent to arbitrate the matter pursuant to Paragraph 10 of the Agreement.[19] On June 23, 2014, Plaintiffs' counsel responded requesting case law to support its contention that Giorgi could be compelled to arbitrate. This information was provided by Defendants on June 27, 2014.[20]

On June 27, 2014, Plaintiffs filed a response in opposition to Defendants' motion to dismiss the amended complaint.[21] On July 8, 2014, this Court denied Defendants' motion to dismiss the amended complaint and directed them to file an answer. On July 28, 2014, Defendants filed an answer to Plaintiff's amended complaint, including as an affirmative defense that Plaintiffs' court action is barred because the Agreement contains an arbitration provision.[22]

On July 29, 2014, Defendants filed this motion to compel arbitration.[23] On August 12, 2014, Plaintiffs filed a response in opposition to Defendants' motion.[24] On August 19, 2014, Defendants requested leave to file a reply brief in support of their motion to compel arbitration,[25] which was granted by Order dated August 20, 2014.[26]

**LEGAL STANDARD OF REVIEW**

A motion to compel arbitration is reviewable by the standards implicated in either Federal Rule of Civil Procedure (Rule) 12(b)(6) or Rule 56. The Third Circuit recently clarified the applicable standard for evaluating a motion to compel arbitration as follows:

---

Giorgi's claim for Detrimental Reliance/Promissory Estoppel against The Bellevue (Count VII); Conversion against all Bellevue Defendants and Centerpoint (Count VIII); Giorgi's claim for Wage Payment and Collection Act against The Bellevue (Count IX); Just b's claim for Unjust Enrichment against all Defendants (Count X); and Giorgi's claim for Unjust Enrichment against all Defendants (Count XI). *See* Am. Compl.
[16] [ECF 7].
[17] [ECF 8].
[18] [ECF 10].
[19] *See* Dfts' Brief, Exh. B.
[20] *See id.*, Exh. C.
[21] [ECF 11].
[22] Answ. ¶77.
[23] [ECF 15].
[24] [ECF 18].
[25] [ECF 20].
[26] [ECF 22].

> [W]hen it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay. But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question. After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard.

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (internal citations and quotation marks omitted).

In moving to compel arbitration, Defendants assert that Plaintiffs' complaint is based on an alleged breach of the Agreement between Just b and The Bellevue, which contains the arbitration clause. Since the Agreement is central to Plaintiffs' claims and was attached to the amended complaint, this Court finds that Defendants' motion to compel arbitration is properly reviewed under the Rule 12(b)(6) standard. *See id.*

Thus, when considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The complaint must do more than merely allege a plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Id.* (citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)) (alterations in original). "A claim has facial plausibility when the plaintiff

5

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* To survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must allege facts sufficient to 'nudge [his] claims across the line from conceivable to plausible.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

**DISCUSSION**

With these principles in mind, before compelling Plaintiffs to arbitrate this matter,[27] this Court must determine (1) if an agreement to arbitrate exists and (2) whether the dispute at issue falls within the scope of that agreement. In addition, this Court must also determine whether Plaintiff Giorgi can be compelled to arbitrate her claims and whether Defendants, as argued by Plaintiffs, have waived the right to compel arbitration.

The Federal Arbitration Act, 9 U.S.C. §§1, *et seq.* ("FAA"), was enacted as a body of federal substantive law to establish and govern the duty to honor agreements to arbitrate disputes. *See Invista S.A.R.L. v. Rhodia*, S.A., 625 F.3d 75, 83 (3d Cir. 2010); *Century Indemnity Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 522 (3d Cir. 2009) (citation omitted). "Congress designed the FAA to overrule the judiciary's longstanding reluctance to enforce agreements to arbitrate and its refusal to put such agreements on the same footing as other contracts and, in the FAA, expressed a strong federal policy in favor of resolving disputes

---

[27] In determining whether this Court has jurisdiction over the motion to compel arbitration, it must "look through" the motion to the underlying action to see if there is federal jurisdiction but for the arbitration agreement. *GGNSC Lancaster v. Roberts*, 2014 WL 1281130, at *2, slip op. (E.D. Pa. Mar. 31, 2014) (citing *Vaden v. Discover Bank*, 556 U.S. 49, 62 (2009)). Here, diversity jurisdiction exists over the underlying substantive dispute under 28 U.S.C. §1332. Thus, this Court has jurisdiction to decide Defendants' motion to compel arbitration.

through arbitration." *Invista S.A.R.L.*, 625 F.3d at 83-84; *Century Indem. Co.*, 584 F.3d at 522 (citations omitted). The FAA provides that, as a matter of federal law, "'[a] written provision' in a maritime or commercial contract showing an agreement to settle disputes by arbitration 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or equity for the revocation of any contract." *Century Indem. Co.*, 584 F.3d at 522 (quoting 9 U.S.C. §2).

The FAA empowers district courts to compel arbitration in accordance with an agreement and to enforce awards made. *Invista S.A.R.L.*, 625 F.3d at 84 (citing 9 U.S.C. §206 and §207 respectively). "The strong federal policy favoring arbitration, however, does not lead automatically to the submission of a dispute to arbitration upon the demand of a party to the dispute." *Id.* (quoting *Century Indem. Co.*, 584 F.3d at 523). "Because an arbitrator's authority derives solely from the parties' agreement to submit their disputes to arbitration, a party cannot be compelled to submit a dispute to arbitration unless it has agreed to do so." *Century Indem. Co.*, 584 F.3d at 523-24 (citations omitted).

In determining if parties "have agreed to arbitrate, we apply ordinary state-law principles that govern the formation of contracts." *Id.* at 524 (citation and internal quotation marks omitted). "These principles must govern contracts generally; a state-law principle that takes its meaning from the fact that an agreement to arbitrate is at issue does not comport with section 2 of the FAA and therefore is preempted." *Id.* (citations omitted).

*I. Valid Agreement to Arbitrate*

Courts generally look to the principles of state contract law when determining the validity of an agreement. *First Option of Chicago Inc., v. Kaplan*, 514 U.S. 938, 944 (1995). Under Pennsylvania law, which is the relevant state law, "contract formation requires: (1) a mutual manifestation of an intention to be bound, (2) terms sufficiently definite to be enforced, and (3)

consideration." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160, (3d Cir. 2009); *Bent Glass Design v. Scienstry, Inc.*, 2014 WL 550548, at *9, slip op. (E.D. Pa. Feb. 12, 2014) (citing *Feldman v. Comm. College of Allegheny*, 85 F.App'x 821, 827 (3d Cir. 2004)). Here, the facts as pled by Plaintiffs, establish that Just b and The Bellevue agreed that Just b would provide Pilates instruction at The Sporting Club in exchange for remuneration, a studio, and other considerations, for a term of one year, which could be renewed by mutual consent. At Paragraph 10 of their Agreement, the parties also agreed that:

> *This Agreement shall be governed by and in accordance with the law of the Commonwealth of Pennsylvania. Any legal action arising pursuant to this Agreement shall be resolved by binding arbitration of JAMS, Inc. in Philadelphia, Pennsylvania.*[28]

An arbitration clause is a matter of contract. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002); *see also Nino v. Jewelry Exchange, Inc.*, 609 F.3d 191, 200 (3d Cir. 2010). If there is "[a] written provision in … a contract evidencing a transaction involving commerce to settle by arbitration any controversy," the contract falls within the scope of the FAA. *See* 9 U.S.C. §2. Here, Plaintiffs' complaint centers on allegations that the Bellevue Defendants breached the terms of their Agreement, the existence of which neither party disputes, for which there is any legal reason to find otherwise. Further, neither party disputes that the Agreement involves commerce. As such, based on the established facts, Defendants have shown the existence of an Agreement between Just b and The Bellevue that contains a valid agreement to arbitrate, satisfying the first prong of the FAA analysis.

## II. Dispute Falls Within the Scope of the Arbitration Provision

Generally, once the court has found that there is a valid agreement to arbitrate, the determination of whether "a particular dispute is within the class of those disputes governed by

---
[28] Agrt. ¶10; Am. Compl., Exh A.

the arbitration clause ... is a matter of federal law." *Century Indem. Co.*, 584 F.3d at 524; *China Minmetals Materials Imp. & Exp. Co., Ltd. v. Chi Mei Corp.*, 334 F.3d 274, 290 (3d Cir. 2003) (internal citations and quotation marks omitted); *Gay v. CreditInform*, 511 F.3d 369, 388 (3d Cir. 2007); *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178 (3d Cir. 1999). That is, federal substantive law applies to determine whether an issue at hand is subject to arbitration. *Peltz ex rel. Estate of Peltz v. Sears, Roebuck & Co.*, 367 F. Supp. 2d 711, 717 (E.D. Pa. 2005) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985) (citations omitted)). Federal law preempts state law insofar as it prohibits or limits arbitration under a contract encompassed by the FAA. *Peltz*, 367 F. Supp. 2d at 717 (citing *Allied–Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 280 (1995)).

The question of the arbitrability of a contract is one for judicial determination unless the parties clearly and unmistakably provide otherwise, *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649 (1986); *Mitsubishi*, 473 U.S. at 626 (citations omitted); 9 U.S.C. §§3, 4, or "where contracting parties would likely have expected a court to have decided the gateway matter." *Howsam*, 537 U.S. at 83. Otherwise, it is matter for the arbitrator. *Id.* "There is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Century Indem. Co.*, 584 F.3d at 524 (citing *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986) (internal quotation marks and citations omitted)). Generally, courts apply a presumption in favor of enforcing arbitration clauses. *Griswold v. Coventry First LLC*, 762 F.3d 264, 271 (3d Cir. 20104) (citing *Preston v. Ferrer*, 552 U.S. 346, 349 (2008)). However, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there

9

is clear and unmistakable evidence that they did so." *Silec Cable S.A.S. v. Alcoa Fjardaal SF*, 2012 WL 5906535, at *16 (W.D. Pa. Nov. 26, 2012) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995) (internal citations omitted)).

Here, Plaintiffs argue that the arbitration clause language referencing "[a]*ny legal action arising pursuant to this Agreement*" does *not* mean that any controversy between Just b and The Bellevue is subject to arbitration or that any controversy which relates to the Agreement is subject to arbitration. Instead, Plaintiffs contend that the "*arising pursuant to this Agreement*" language is limited to claims that arise from *and* are pursuant to the Agreement; and because The Bellevue terminated the Agreement, there is no longer an Agreement to be enforced and, therefore, no arbitration to compel. This Court finds this argument disingenuous since Plaintiffs' entire cause of action is based on the same Agreement they wish to enforce but, for purposes of this motion to compel, claim that it can no longer be enforced. *See* Am. Compl.

Notwithstanding, when interpreting the phrase "[a]*ny legal action arising pursuant to this Agreement*," this Court is bound by the plain meaning of the language. *See Aluminum Bahrain B.S.C. v. Dahdaleh*, __ F. Supp. 2d __, 2014 WL 1681494, at *9 (W.D. Pa. Apr. 28, 2014) (the court, in interpreting the agreements, must give the language "in connection with" its plain meaning) (citing *John Wyeth & Bro. Ltd. v. CIGNA Intern. Corp.*, 119 F.3d 1070, 1074 (3d Cir. 1997)). In order to "arise under" an agreement, a claim need not be identifiable as an issue explicitly covered by the agreement, but merely must be engendered by virtue of the relationship the agreement established or otherwise addressable by reference to the duties and obligations set out in the agreement. *Spaz Beverage Co. Defined Ben. Pension Plan v. Douglas*, 2011 WL 3359749, at *5 (E.D. Pa. Aug. 4, 2011) (citing *Am. Fin. Capital Corp. v. Princeton Elec. Prods.*, 1996 WL 131145, at *9 (E.D. Pa. Mar. 20, 1996)); *see also Pritzker v. Merrill Lynch, Pierce,*

*Fenner & Smith, Inc.*, 7 F.3d 1110, 1114 (3d Cir. 1993) (holding that provision requiring arbitration of "all controversies which may arise" between the parties to cash management agreement applied to claim for breach of fiduciary duties under ERISA); *Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH*, 585 F.2d 39, 46 (3d Cir. 1978) (finding that all issues arising between the parties in the course of their relationship could be described as "arising under" the agreement creating that relationship).

Contrary to Plaintiffs' characterization of this phrase as "self-limiting," this Court finds the arbitration clause language to be broad and unambiguous, encompassing any dispute that has a "logical or causal connection" to the Agreement. *See John Wyeth*, 119 F.3d at 1074 (finding "arising in relation to" contractual language includes any dispute with a "logical or causal connection" to the subject agreements). As stated, the Agreement provided for Plaintiffs to bring their Method Pilates to The Sporting Club in exchange for certain considerations. The amended complaint alleges that Defendants violated the terms of the Agreement when, *inter alia*: The Bellevue failed to promote, advertise, provide appropriate signage, or engage in marketing activities that would enhance Plaintiffs' business at The Bellevue;[29] the Bellevue Defendant withheld income or commissions due Giorgi and her instructors pursuant to the Agreement and converted said income to their own use;[30] and The Bellevue's terminated the Agreement 10 days earlier than stipulated and without prior notice to Plaintiffs.[31]

Because the disputes at issue, as pled by Plaintiffs in the amended complaint, logically and causally arise from and are connected to the alleged breach of the Agreement claims, this Court deems these disputes to fall within the scope of the arbitration provision. Thus, Defendants have established the second prong in the FAA analysis; that is, this Court finds that a valid

---

[29] Am. Compl. ¶21.
[30] *Id.* at ¶30.
[31] *Id.* at ¶34.